UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Michael Ledger,
     Plaintiff

     v.                                    Civil No. 06-cv-411-SM
                                           Opinion No. 2008 DNH 140
Ryan LeVierge, individually;
George Antilus, individually;
Nicholas Granville, individually;
Jason Riley, individually; Officers
John Doe, individually; James O'Mara,
as Superintendent of the Hillsborough
County Department of Corrections,
     Defendants


**O R D E R**

Michael Ledger sues in three counts, seeking declaratory relief and damages based upon allegations that correctional officers at the Hillsborough County House of Corrections ("HCHC") unnecessarily placed him in a restraint chair and beat him. Before the court is defendants' motion for summary judgment. Plaintiff objects. For the reasons given, defendants' motion for summary judgment is granted in part and denied in part.


**Summary Judgment Standard**

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P.

56(c).  To defeat a motion for summary judgment, "the non-moving party 'must set forth specific facts showing that a genuine issue of material fact exists as to each issue upon which [he] would bear the ultimate burden of proof at trial.'"  Torres-Negron v. Merck & Co., 488 F.3d 34, 39 (1st Cir. 2007) (quoting Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 53 (1st Cir. 2000)).  To make that showing, "the non-moving party may not rest merely upon the allegations or denials in its pleading." Id. (citation omitted).  When ruling on a party's motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  See id. (citing Rodríguez v. SmithKline Beecham, 224 F.3d 1, 5 (1st Cir. 2000)).

## Background

The following facts are not in dispute.  At approximately 6:30 p.m. on February 7, 2006, plaintiff crashed his van.  After a five-hour stand-off with the Milford police, he was arrested and transported to the Milford police station, where he was seen by emergency medical technicians.  He was then transported to the HCHC, where he was seen by the jail's nurse, who directed that he be taken to a hospital.  He spent approximately four hours at Elliot Hospital, and was returned to the jail at about 6:30 a.m.

on February 8. At 10:00 a.m. he was taken to court. He was returned to the HCHC at about noon and was at the jail until about 2:30 p.m., when he was again taken to Elliot Hospital. There, he was treated for a deep, 1 ½-inch deep head laceration and diagnosed with hematoma to both eyes. From Elliot Hospital he was transferred to the Dartmouth Hitchcock Medical Center, where he was diagnosed with a traumatic T-12 burst compression fracture, i.e., a broken back, and an injury to his left wrist.

The parties also agree on plaintiff's movements in the HCHC between his return from court and his second trip to Elliot Hospital. Initially, he was placed in cell 2110, which has clear lexan walls. He was then taken to cell 2098, a so-called "safety cell." Lt. Cunningham ordered that he be placed in a "restraint chair." To accomplish that, plaintiff was moved from cell 2098 to cell 2099, another "safety cell." While in cell 2099, plaintiff was placed in the restraint chair. At some point thereafter, a nurse was called in to assess a cut on plaintiff's face. She cleaned and dressed the cut, and recommended that plaintiff be taken back to Elliot Hospital.

Plaintiff claims that defendants violated his constitutional rights (Count I) and committed common law assault (Counts II and

3

III) by placing him in the restraint chair and by beating him to the point where he suffered a cut on his face, a broken back, and injuries to his wrist.

## Discussion

Defendants contend that they are entitled to summary judgment because: (1) the undisputed factual record demonstrates that HCHC officers were justified in placing plaintiff in the restraint chair; (2) plaintiff has no evidence that he was beaten by HCHC officers or that his broken back was caused by the alleged assault rather than the automobile accident he was involved in just before his arrest; (3) plaintiff has inadequate evidence to support the <u>respondeat superior</u> theory on which Count III is based; and (4) the HCHC officers are entitled to qualified immunity on plaintiffs' claim that he was unlawfully placed in the restraint chair.  Plaintiff counters that summary judgment is precluded by the existence of genuine issues of material fact.

<u>Count I</u>

Plaintiff claims, pursuant to 42 U.S.C. § 1983, that Sgt. Ryan LeVierge, Officer George Antilus, FTO Nicholas Granville, Sgt. Jason Riley, and the John Doe defendants violated his rights

under the Fourteenth Amendment to the United States Constitution by placing him in a restraint chair and beating him.

"A pretrial detainee's claim that he has been subjected to unconstitutional conditions of confinement implicates Fourteenth Amendment liberty interests . . . [which] are coextensive with those of the Eighth Amendment's prohibition against cruel and unusual punishment." Surprenant v. Rivas, 424 F.3d 5, 18 (1st Cir. 2005) (citing Burrell v. Hampshire County, 307 F.3d 1, 7 (1st Cir. 2002)). "In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citing Hudson v. McMillian, 503 U.S. 1 (1992)). More specifically, "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Hudson, 503 U.S. at 5 (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)).

"In order to establish a constitutional violation, a plaintiff's claim must meet both objective and subjective criteria." Surprenant, 424 F.3d at 18 (citing Farmer, 511 U.S. at 834)). "[C]ourts considering a prisoner's claim must ask both

if 'the officials acted with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Hudson, 503 U.S. at 8 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

"The objective component of an Eighth Amendment claim is . . . contextual and responsive to 'contemporary standards of decency.'" Hudson, 503 U.S. at 8 (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976)). While "not . . . every malevolent touch by a prison guard gives rise to a federal cause of action," Hudson, 503 U.S. at 9 (citing Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)), "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated," id. at 6-7.

Regarding the subjective element, the Eighth Amendment prohibits "the unnecessary and wanton infliction of pain." Hudson, 503 U.S. at 5 (citation omitted). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id.

### A. Use of the Restraint Chair

In his complaint, plaintiff alleges that he "did not exhibit behavior that justified [his] placement into the restraint chair," (First Am. Compl. ¶ 19), and claims, in Count I, that "[i]n violation of [his] Fourteenth Amendment rights, Le[V]ierge, Antilus, Granville, Riley and the John Doe defendants improperly placed [him] in the restraint chair and violently beat [him]" (id. ¶ 34).

Even assuming that a correctional officer would violate the Eighth Amendment by unjustifiably placing an inmate in a restraint chair, defendants are nonetheless entitled to summary judgment to the extent plaintiff's claim is based upon defendants' use of the restraint chair.

Defendants have produced unrebutted evidence that Lt. Cunningham ordered plaintiff to be placed in the restraint chair after being informed that plaintiff repeatedly failed to comply with Sgt. LeVierge's command to sit down, a command he gave due to his concern that plaintiff, who was wearing leg restraints, was in danger of falling down if he did not sit down.  Defendants have also produced unrebutted evidence that when LeVierge went into cell 1098 to get plaintiff, plaintiff quickly backed up,

fell down, and struck the left side of his head on the wall of the cell.  The evidence on which defendants rely is an incident report prepared by Sgt. LeVierge and his affidavit.  (Defs.' Mot. Summ. J., Ex. O.)

It is undisputed that plaintiff has no memory of what took place in the jail between his return from court on February 9 and his second trip to the hospital.  (Defs.' Mot. Summ. J., Ex. B (Ledger Dep.) at 163.)  In response to defendants' motion for summary judgment, plaintiff argues that LeVierge's report is not corroborated by the reports of Sgt. Riley, FTO Granville, and Officer Antilus, which "do not even describe when [plaintiff] allegedly fell and cut his eye."  Based upon that lack of corroboration, plaintiff further asserts that LeVierge made a false report to Lt. Cunningham, which caused Lt. Cunningham to issue the order to put him in the restraint chair.  In plaintiff's view, the lack of corroboration in the reports of Sgt. Riley, FTO Granville, and Officer Antilus creates a triable issue of fact concerning whether he was placed in the restraint chair for a valid penological purpose, or merely for the purpose of maliciously and sadistically inflicting unwarranted punishment and harm.

Given the undisputed factual record, defendants' use of a restraint chair did not violate plaintiff's constitutional rights. Plaintiff has not carried his burden of "set[ting] forth specific facts showing that a genuine issue of material fact exists as to each issue upon which [he] would bear the ultimate burden of proof at trial." Torres-Negron, 488 F.3d at 39 (citation omitted). That is, he has produced no evidence from which a reasonable trier of fact could conclude that HCHC officers placed him in the restraint chair not for a legitimate penological purpose, but to inflict unnecessary pain. Defendants have produced evidence that plaintiff was placed in the restraint chair because he refused to comply with orders, orders intended to protect him from falling down while restrained. Plaintiff, on the other hand, points to <u>no</u> evidence tending to show that he was behaving in a manner that made the restraint chair unnecessary. Rather than producing <u>any</u> evidence of his own, plaintiff merely says that defendants have not produced enough evidence. More is required to stave off summary judgment. See <u>id.</u>

### B. The Alleged Beating

Plaintiff's claim that he was unlawfully beaten by HCHC officers stands on a different footing.

Defendants argue that "there is simply no evidence at all that officers 'violently beat' Ledger." More specifically, they argue that: (1) plaintiff has no recollection of the alleged assault; (2) his claim is based entirely on the testimony of fellow inmate Charles Glenn, who was never physically in a position from which he could have seen any assault; (3) while Glenn testified about an assault in cell 2098 perpetrated by Sgt. Riley, Officer Antilus, and FTO Granville, he mentioned no participation by Sgt. LeVierge and no assault in cell 1099 and/or the restraint chair; and (4) Glenn's testimony about an assault by Sgt. Riley, Officer Antilus, and FTO Granville is disproven by HCHC surveillance videotapes. Plaintiff counters by producing portions of Glenn's deposition along with affidavits from three other HCHC inmates, each of whom says he heard and partially saw several HCHC officers beat plaintiff while he was wearing handcuffs in cells 2110 and 2098 and/or while he was strapped in the restraint chair in cell 2099. Whether plaintiff was beaten by Sgt. LeVierge, Sgt. Riley, Officer Antilus, and FTO Granville is a genuine issue of material fact. Plaintiff has produced evidence from which a jury could resolve the factual issue in his favor.

Defendants also argue that they are entitled to summary judgment to the extent plaintiff claims that his alleged beating resulted in a broken back, because he has failed to produce probative evidence that his broken back was caused by anything other than the motor vehicle accident that preceded his arrest. That argument is unavailing in light of plaintiff's production of reports by orthopaedic surgeon Davis W. Clark (Pl.'s Obj. to Summ. J, Ex. 6) and forensic psychiatrist David J. Bourne (id., Ex. 8). The basic thrust of those reports is that a T-12 burst fracture causes tremendous pain, and that if plaintiff had broken his back in the motor vehicle accident, he would have perceived and reported that pain during his first visit to Elliot Hospital, and would not have been able to move his body in the way he did on various videotapes taken prior to the alleged beating. Those reports are more than sufficient to create a genuine issue of material fact concerning the cause of plaintiff's broken back.

Based on the foregoing, defendants' motion for summary judgment is granted in part and denied in part as to Count I. What remains is plaintiff's claim that defendants violated his constitutional rights by beating him, without justification, during the time he spent in cells 2110, 2099, and 2098 between noon and 2:30 on February 9, 2006.

Count II

In Count II, plaintiff asserts that "by placing [him] in the restraint chair and by beating [him] . . . Le[V]ierge, Antilus, Granville, Riley and the John Doe defendants committed the common law tort of assault, or unprivileged physical contact." (First Am. Compl. ¶ 38.) The undisputed factual record demonstrates that the physical contact involved in placing plaintiff in the restraint chair was privileged, for the reasons given earlier. However, plaintiff has produced evidence sufficient to allow him to go forward on an assault claim based upon the alleged beating. Accordingly, defendants' motion for summary judgment is granted in part and denied in part as to Count II.

Count III

In Count III, plaintiff asserts that Superintendent James O'Mara is liable for the assault alleged in Count II, under the doctrine of respondeat superior. In reliance upon Daigle v. City of Portsmouth, 129 N.H. 561 (1987), O'Mara argues that he is entitled to summary judgment on Count III because plaintiff has no evidence that he, O'Mara, knew about or acquiesced to the conduct of the other defendants and no evidence that those other defendants had ever been found to have used unlawful force on any inmate in the past. O'Mara's argument is unavailing.

12

"Under respondeat superior, 'an employer may be held vicariously responsible for the tortious acts of its employee [, even intentional torts like assault,] if the employee was acting within the scope of his or her employment when his or her tortious act injured the plaintiff.'" Porter v. City of Manchester, 155 N.H. 149, 152 (2007) (quoting Porter v. City of Manchester, 151 N.H. 30, 39-40 (2004)); see also Daigle, 129 N.H. at 579. "[C]onduct falls within the scope of . . . employment if: (1) it is of the kind [the employee] is employed to perform; (2) it occurs substantially within the authorized time and space limits; and (3) it is actuated, at least in part, by a purpose to serve the employer." Porter, 155 N.H. at 152.

Neither of the facts O'Mara identifies – knowledge of the employees' conduct in this case, and those employees' previous conduct – is necessary to prove the third element of "scope of employment." Certainly, if plaintiff were to prove that O'Mara did know about or acquiesce in the conduct, that might tend to support a claim that they acted with the purpose of serving the employer.

Because the undisputed factual record does not support the conclusion that LeVierge, Riley, Antilus, and Granville were

acting beyond the scope of their employment, as a matter of law, when they allegedly beat plaintiff, O'Mara is not entitled to summary judgment on Count III.

### Conclusion

For the reasons given, defendants' motion for summary judgment (document no. 20) is granted in part and denied in part. The case remains on track for trial on all three counts, subject to the exclusion of plaintiff's placement in the restraint chair as a basis for liability.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

August 7, 2008

cc:  Michael J. Sheehan, Esq.
     John A. Curran, Esq.
     Elizabeth L. Hurley, Esq.